IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EUGENE W. HURST                                                                                          PLAINTIFF

          v.                              Civil No. 11-3031

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                   DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Eugene Hurst, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his applications for DIB and SSI on October 19, 2004, alleging an onset date of January 1, 2002, due to diabetes, neuropathy, depression, and the residuals of a stroke. Tr. 12, 62-66, 88-89, 92-99, 100-107, 109, 118, 131-136, 137-143. His applications were denied initially and on reconsideration. Tr. 31-32, 48-49.

On January 8, 2008, the ALJ entered an order dismissing Plaintiff's request for an administrative hearing. Tr. 28-29. His order states:

> An online search of the Arkansas Department of Correction's inmate database reveals that the claimant has been incarcerated by the Arkansas Department of Correction since September 13, 2006, and that he is presetnely incarcerated in the Grimes Unit. That search further reveals that he is serving a 10-year sentence due

>to being convicted of a felony terrorist threatening offense and two felony drug offenses and that the earliest he is scheduled to go before the post-prison transfer board is February 27, 2009.

Tr. 28. Ultimately, the ALJ concluded that Plaintiff's request for a hearing was moot, because incarcerated individuals are ineligible for benefits. 20 C. F. R. § 404.468, 416.1325. This ruling was appealed to the Appeals Council, and the matter remanded back to the ALJ to hold a hearing. Tr. 24-25. The Appeals Council stated that incarceration is not a reason to dismiss a request for a hearing. A hearing must be held and a determination regarding his disability made. It is only then that the provisions in sections 404.1325 and 404.468 apply. Tr. 24-25.

An administrative hearing was held on February 20, 2009. Tr. 569-616. Plaintiff was present and represented by counsel. At this time, plaintiff was 52 years of age and possessed a tenth grade education. Tr. 20, 115, 124, 579. He had past relevant work ("PRW") experience as an upholsterer. Tr. 20, 84-85, 110, 119-120, 126-127, 580-584.

On September 18, 2009, the Administrative Law Judge ("ALJ") concluded that Plaintiff's diabetes mellitus with neuropathy and mood disorder were severe impairments, but did not meet or medically equal one of the listed impairments in 20 C. F. R., Part 404, Subpart P, Appendix 1. Tr. 14-16. He found that plaintiff maintained the residual functional capacity ("RFC") to perform unskilled light work where the interpersonal contact is incidental to the work performed. Tr. 16-20. With the assistance of a vocational expert, the ALJ then found he could still perform work as a maid, poultry deboner, and delivery driver. Tr. 20-21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 22, 2011. Tr. 4-6. Subsequently, plaintiff filed this action. Doc. # 1. This

case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. Doc. # 10, 11.

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

3

1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *See Barnhart v. Walton*, 535 U. S. 212, 219-220 (2002).

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). Although the ALJ is not always obligated to obtain additional information from a treating doctor or order consultative examinations, he "should re-contact a treating or consulting physician if

4

a critical issue is undeveloped" or underdeveloped. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

In the present case, the record reveals that Plaintiff was suffering from brittle insulin dependent diabetes, diabetic neuropathy, and depression. In 2004, he suffered a minor stroke, resulting in some decreased function on his right side. And, by 2005, he was battling a methamphetamine addiction and ultimately sentenced to three years in prison sentence for drug related activity. The record does not, however, make clear Plaintiff's work-related limitations. *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003) (ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace). Two of his treating doctors have opined that his condition was severe and deteriorating, but neither doctor was asked to complete an RFC assessment. Plaintiff also underwent a consultative neurological evaluation, and two mental assessments.

On November 4, 2004, Dr. Paul Wilbur, Plaintiff's treating doctor at the Mountain Home Christian Clinic, wrote a letter indicating that Plaintiff suffered from insulin dependent diabetes that was difficult to control and complicated by peripheral neuropathy. Tr. 244. He stated that Plaintiff had been a patient at Mountain Home Christian Clinic off and on over the last several years. Further, Dr. Wilbur reported that Plaintiff's general medical condition had worsened over that time period. Tr. 244.

On February 2, 2005, Plaintiff underwent a neurological consultative examination with Dr. Mario Cauli. Tr. 316-318. He stated that his problems dated back to 2001 or 2002, admitting that the problems with his right side began in 2002. At that time, Plaintiff indicated that he developed tinging and weakness involving the right side of his face, arm, and legs as well

as a pain sensation in his ear. Plaintiff also complained of difficulties with concentration and memory, diffuse fatigue, diffuse weakness, and some paresthesia in both hands and feet. Plaintiff attributed his disability to an inability to stay focused. From a neurological point of view, Dr. Cauli found no functional problems involving motor skills or coordination. He did, however, believe Plaintiff's decreased stamina and diffuse generalized weakness were due to a combination of poorly controlled diabetes and latent depression. Tr. 316-316.

On March 21, 2005, Dr. Richard Burnett wrote a letter indicating that he had treated Plaintiff on October 18, 2004, for severe brittle diabetes, post CVA, and depression secondary to chronic illness and stroke. Dr. Burnett concluded that Plaintiff was unable to work at that time, and remained unable to work. At that time, his medications included Glucophage XR, Lantus, Novalog, and Aspirin. Tr. 319.

On June 7, 2005, Plaintiff underwent a mental status evaluation of adaptive functioning with Dr. Adam Brazas. Tr. 328-335. Plaintiff indicated that his sugar level was out of control, he was a nervous wreck, he was too weak to perform work, he was depressed, and his financial condition was dire and prevented him from obtaining an insulin pump. He also admitted to using methamphetamine approximately six months earlier, stating that it initially gave him the energy needed to work. Plaintiff stated that he used about one gram per day intravenously for approximately four months before going to rehab. However, he was reportedly kicked out of rehab for using meth. Since leaving rehab, he admitted to using methamphetamine a few times with his last reported use being one week prior to this evaluation. Dr. Brazas noted that Plaintiff exhibited a somewhat lethargic demeanor once he was in the office and started talking. He spontaneously elaborated on questions and queries from the examiner. His speech was

6

normal, but he spoke in monotone. The content of his speech was lucid, rational, and adequately organized. Plaintiff denied hallucinations and there was no indication of any delusional or paranoid thought processes. Dr. Brazas diagnosed Plaintiff with major depressive disorder, amphetamine dependence, and diabetes. He then assessed him with a global assessment of functioning ("GAF") of 45. He noted that Plaintiff's condition was not expected to improve significantly within the next 12 months. Dr. Brazas also stated that Plaintiff's concentration for serial 3's, digits backward, and current personages was very poor. However, he was easily able to persist for the hour and a quarter interview and responded at a normal pace. Ultimately, Dr. Brazas was undecided as to whether two or more areas with significant limitations in adaptive function could be identified. Tr. 328-335.

On August 3, 2005, Dr. Vann Smith performed a neuropsychological evaluation of Plaintiff at his attorney's request. Tr. 350-353. Plaintiff complained of a history of steadily worsening neurocognitive and emotive symptoms including impaired recall/declarative memory, impaired concentration, bradyphrenia, abulia, anhedonia, diminished tolerance for frustration, dysexecutivism, sleep pattern disturbance, and affective lability. Dr. Smith noted that Plaintiff was oriented on all spheres, had impaired memory, exhibited a dysthymic mood with mild anxiousness, and had a muted, shallow, and rigid affect. Tr. 350-353. His gait was slow and hesitant with restricted associated arm movement. Plaintiff's postures were guarded, his eye contact fleetingly maintained, and he appeared to have some difficulty remaining awake. His thought processes were functional to concrete in quality. Dr. Smith then diagnosed Plaintiff with cognitive dysfunction secondary to his insulin dependent diabetes, cardiac problems,

hypertension, status post stroke, chronic pain syndrome, diabetic peripheral neuropathy, and narcolepsy.[1] He then assessed him with a GAF of 50-55. Tr. 350-353.

Dr. Smith also completed a mental RFC assessment. Tr. 354-358. He indicated that Plaintiff's prognosis was guarded/poor. Dr. Smith indicated that Plaintiff would be unable to meet competitive standards in the following areas: maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding, remembering, and carrying out detailed instructions; setting realistic goals or making plans independently of others; and, dealing with the stress of semiskilled and skilled work. He also concluded Plaintiff was seriously limited but not precluded from remembering work-like procedures; understanding, remembering, and carrying out very short and simple instructions; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; responding appropriately to changes in a routine work setting; dealing with normal work stress; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places; and, using public transportation. Further, he opined that Plaintiff would likely miss more than four days of work per week due to his impairments or treatment. Tr. 354-358.

---

[1] However, it appears Plaintiff failed to report his methamphetamine abuse. And, methamphetamine use is known to cause irritability, anhedonia, mood or mental changes, trouble sleeping, trouble concentrating, nervousness, depression, and unusual tiredness or weakness. Mayo Foundation for Medical Education and Research, *Methamphetamine (Oral Route)*, www.mayoclinic.com (last visited May 16, 2012).

Our concern here is three fold. First, the ALJ failed to even discuss these medical source statements provided by Drs. Wilbur and Burnett. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). And, we note that the ALJ must give good reasons for whatever weight he gives the treating physician's opinion. *Holmstrom v. Massanari,* 270 F.3d 715, 720 (8th Cir. 2001).

Second, the ALJ failed to follow-up with these doctors to request that they complete an RFC assessment. In reviewing the record, we note that the only RFC assessment of record was completed by a non-examining, consultative doctor. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Given that these two treating doctors have indicated that Plaintiff's physical condition is deteriorating, we believe he was obligated to recontact these doctors to develop the record with regard to Plaintiff's RFC. *See Johnson*, 627 F.3d at 320.

Our third concern is related to Plaintiff's methamphetamine addiction. In reviewing the reports of Plaintiff's treating doctors, as well as those of Drs. Brazas and Smith, we can find no evidence to indicate the severity of Plaintiff's drug problem or its impact on his ability to function. In fact, aside from Dr. Brazas notation that Plaintiff was addicted to amphetamine and had last used it one week prior to his assessment, there is no discussion of his addiction. Without this information, we do not see how the ALJ was able to conduct the analysis necessary to determine that Plaintiff's drug use did not comprise a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535. Therefore, on remand, the ALJ is directed to recontact all of Plaintiff's treating and examining doctors, asking

9

them to provide him with insight as to what impact, if any, Plaintiff's drug addiction had on his ability to perform work-like tasks. We are particularly interested in the possible relationship between Plaintiff's drug use and his uncontrolled diabetes, uncontrolled hypertension, and depression.[2]

## IV.   Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of May 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

---

[2]We note that research has indicated that the use of methamphetamine is associated with increased heart rate, an increase in blood sugar levels, and the release of norepinephrine, dopamine, and seratonin (all chemicals thought to be associated with depression). *See* Pseudoephedrine, http://www.mayoclinic.com/health/drug-information/DR601759/DSECTION=before-using (last visited May 23, 2012) (discussing how pseudoephedrine, the main ingredient in methamphetamine, causes an increase in blood glucose levels); National Institute on Drug Abuse, Research Report: Methamphetamine Abuse and Addiction, September 2006, http://www.drugabuse.gov/publications/research-reports/methamphetamine-abuse-addiction (listing stroke, anxiety, insomnia, fatigue, mood disturbances, paranoia, memory loss, and cognitive problems as possible side effects of methamphetamine use).

AO72A
(Rev. 8/82)